UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| THOMAS JOHNSTON, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 5: 19-104-DCR |
| | ) |
| V. | ) |
| | ) |
| SUBBEAM PRODUCTS, INC., et al., | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*　\*\*\*　\*\*\*　\*\*\*

This dispute involves a burn to Plaintiff Thomas Johnston's right foot allegedly caused by Defendants Sunbeam Products, Inc. and Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions ("Sunbeam") Warming Throw. The defendants have moved for summary judgment, asserting that the plaintiffs' proof is inadequate to support their product liability claims and that they consciously disregarded the instructions and warnings on the Throw. [Record No. 32] Because the plaintiffs failed to provide expert testimony, they cannot demonstrate the existence of a genuine issue of material fact. As a result, the defendants are entitled to judgment as a matter of law.

**I.**

Thomas Johnston was involved in a motorcycle accident in August 2005, leading to him becoming a paraplegic. [Record No. 32-6, p. 2] As a result of the injury, he does not have normal sensation in his lower extremities.

Sunbeam creates heated bedding products like heated blankets and warming throws. Whitney Johnston bought a Sunbeam Warming Throw ("the Throw") in December 2017. The

-1-

Throw included a warning label that stated: "[f]ailure to follow instructions may cause overheating, fire, or personal injury" and that the Throw should not be used by paraplegics. [Record No 32-2] The same warning also is included in the user manual. [Record No. 32-3, p. 2]

Thomas Johnston fell asleep using the Throw on February 2, 2018, and suffered a burn injury to the heel of his right foot. Both Thomas and Whitney Johnston stated that they did not read the warnings or instructions attached to the Throw or included in the user manual. [Record No. 32-6, p. 3; Record No. 32-7, p. 2] Following the injury, the plaintiffs read the warnings. Thomas Johnston also acknowledged that the warnings were clear and that he understood them. [Record No. 32-6, pp. 3-4; Record No. 32-7, pp. 2-3] He testified, however, that even if he had read the instructions, he still would have used the Throw because sometimes he has movement and sensitivity in his lower extremities. [Record No. 32-6, pp. 5-8] Whitney Johnston also testified that she would have allowed her husband use the Throw because he "can sense hot and cold and has feeling in his legs and feet." [Record No. 32-7, p. 3-4]

The plaintiffs filed suit in the Fayette Circuit Court, alleging strict liability, negligence, gross negligence, and breach of warranty. [Record No. 1-1] They contend that the Throw is defective in design because it may become hot enough to cause serious burns to a person using it in a reasonably expected and anticipated way. [Record No. 1-1, p. 8] The plaintiffs also assert inadequate quality control of the Throw during manufacturing and testing. [*Id.*] And they contend that the product was defective because it lacked certain safety features and that the defendants failed to warn the public that the product may heat to the point of causing serious burns. [*Id.* at 9] The plaintiffs further assert that there was a lack of adequate instruction for use and operation and lack of adequate labeling and warnings of potential

hazards. [*Id*. at 12] Finally, the Johnsons argue that the defendants violated both an express and implied warranty because the Throw was not fit for its intended purpose. The defendants removed the case to this Court on March 15, 2019. [Record No. 1]

Principal Engineer Scott Wright, Ph.D., CFEI, CFVI, who is employed by Exponent, Inc., inspected and tested the Throw for the defendants. [Record No. 32-5] He concluded that the Throw had no operational, design, or manufacturing defects. Wright further asserts that the Throw is an Intertek-listed product and that the design, manufacturing, and operation of the Throw complies with UL 964 – an industry standard for electrically heated bedding. Wright determined that the Throw operates cooler than required by safety standards and that it heated uniformly. He further concluded that Thomas Johnston failed to follow the warnings on the Throw and that the surface temperature of the blanket did not produce a level of heat sufficient to cause a thermal burn.

## II.

Entry of summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes,* 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.

### III.

A plaintiff may assert product liability claims for a defective product under multiple theories – including defective design, manufacturing defects, and failure to warn. *Halsey v. AGCO Corp.,* 755 F. App'x 524, 530 (6th Cir. 2014). "Liability may also result under various claims for strict liability, negligence, or breach of warranty." *Id*. However, all the claims and theories of liability require that the plaintiff show that the alleged defect caused his injury. *Id*. Here, the plaintiffs assert claims under all of the above theories.

There is a statutory presumption in product liability cases in Kentucky that a product is not defective if it conforms with certain standards and testing. Kentucky Revised Statutes Section 411.310(2) states:

> In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured.

Dr. Wright inspected and tested the Throw for the defendants. Following this inspection and testing, he concluded that the Throw had no operational defects, no design

defects, and no manufacturing defects. [Record No. 32-5] Instead, Wright noted that "[a]ll observed operation of the warming throw during testing showed its operation complied with the UL 964 safety standard." [*Id*. at 4] UL 964 is the recognized industry safety standard for electrically heated bedding. [*Id*.] Wright concluded that "[t]he design and manufacture of the warming throw complied with all industry safety standards at the time of its manufacture." [*Id*.] The defendants have demonstrated that the statutory presumption applies and the Throw is presumed not to be defective. Wright conducted testing in conformance with the UL 964 safety standard and concluded that the operation, design, and manufacturing of the product complied with the industry safety standards.

The plaintiffs, however, can rebut the statutory presumption by demonstrating that the product was defective. *Boon Edam, Inc., v. Saunders*, 324 S.W.3d 422, 432 (Ky. Ct. App. 2010). "Where a manufacturer is accused of designing a defective product, whether under a strict liability or negligence theory, the consumer must prove that the product was unreasonably dangerous." *Scanlan v. Sunbeam*, 690 F. App'x 319 (6th Cir. 2017). Further, the plaintiff must show "proof of a feasible alternative design." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 378 (6th Cir. 2014). Additionally, "[t]o prevail on a manufacturing defect claim, a plaintiff must show that the product was not manufactured or assembled in accordance with its specifications and that the deviation was a substantial factor in his injury." *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 683-83 (E.D. Ky. 2013), *aff'd* 569 F. App'x 372 (6th Cir. 2014) (internal citations and quotations omitted).

Typically, expert testimony is necessary in product liability cases to establish breach of duty and causation. *Id.* at 681. "Under Kentucky law, a plaintiff needs expert testimony when his design defect claim turns on scientific or specialized knowledge that 'cannot be determined

intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life.'" *Id*. (quoting *Templeton v. Wal-Mart Stores East, LP,* No. 08-169, 2011 U.S. Dist. LEXIS 112744, at *3 (E.D. Ky. Sept. 30, 2011)). However, expert testimony is not required to recover in a product liability case if a jury could "comprehend the facts and draw correct conclusions as well as a specially trained expert could. . . ." *Id*. If a jury could do so, "the plaintiff can proceed without an expert's help." *Id*.

In this case, the defendants assert that the plaintiffs have not disclosed an expert that is properly qualified to testify regarding the design, manufacturing, testing, and inspection of the Throw or any alleged defect. [Record No. 32-1, p. 13] Conversely, the plaintiffs argue that the injury sustained by Thomas Johnston is of the type of that a jury can comprehend without the need for expert testimony. They assert that this product liability suit is based on consumer expectations, which does not require expert testimony. More specifically, the plaintiffs believe that the product failed to satisfy consumer expectations because it is dangerous to an extent beyond which an ordinary consumer would expect when he or she purchases it. The defendants responded stating that the consumer expectations test is only a factor in determining whether a defect was unreasonably dangerous. [Record No. 41, p. 2-3] And they restate the argument that Thomas Johnston's injury was not obviously caused by the Throw so that it would fall within the general knowledge of a lay individual. [*Id*. at 7]

The defendants are correct in noting that consumer expectations is only one factor to consider in determining whether a product is unreasonably dangerous. *See Scanlan*, 690 F. App'x at 331; *see also Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980). The Court should consider the:

> feasibility of making a safer product, patency of the danger, warnings and instructions, subsequent maintenance and repair, misuse, and the products' inherently unsafe characteristics, while they have a bearing on the question as to whether the product was manufactured 'in a defective condition unreasonably dangerous,' are all factors bearing on the principal question rather than separate legal questions. In a particular case, as with any question of substantial factor or intervening cause, they may be decisive.

*Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780-81 (Ky. 1984).

A jury cannot determine deficiencies in the design of the Throw, underlying dangerous conditions, feasible alternative designs, and what warnings would have provided a safer alternative without expert testimony. Further, it could not assess appropriate temperature ranges, additional safety features, and defects in the heating element and heating system without the assistance of expert testimony. Additionally, the plaintiffs did not provide expert testimony that would establish "competent evidence of some practicable, feasible, safer, alternative design." *Trent v. Ford Motor Co.*, 2 F. Supp. 3d 1022, 1026 (W.D. Ky. 2014) (citing *Gray v. GMC*, 133 F. Supp. 2d 530, 535 (E.D. Ky. 2001)). Thus, the plaintiffs cannot rely merely on their pleadings to propose theoretical alternative designs, warnings, and alleged defects. *See, e.g., Celotex*, 477 U.S. at 324.

Strict liability, negligence, and breach of warranty claims for product liability cases all require proof that the product was defective or unreasonably dangerous. *See Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 715 (W.D. Ky. 2013). Because the plaintiffs have not obtained expert testimony on critical issues, they cannot meet their burden to overcome the statutory presumption that the product is not defective. Thus, they have not identified any genuine issues of material fact regarding the dangerousness of the product. The plaintiffs' product liability claims fail, and the defendants' motion for summary judgment will be granted.

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Sunbeam Products, Inc. and Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions motion for summary judgment [Record No. 32] is **GRANTED**.

2. Plaintiffs Thomas and Whitney Johnston's claims for strict liability, negligence and gross negligence, breach of warranty, and damages are **DISMISSED**, with prejudice.

3. The trial of this action, previously scheduled to begin Monday, July 20, 2020, is **CANCELED**.

Dated: March 31, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky